**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., and GEICO
GENERAL INSURANCE COMPANY,

     Plaintiffs,

vs.

SEAN MARTINEAU and SHAZAM AUTO
GLASS LLC,

     Defendants.

_____/

**Case No.: 8:19-cv-1382-T-35SPF**

**Jury Trial Demanded**

**PLAINTIFFS' MOTION AND SUPPORTING MEMORANDUM**
**<u>FOR SUMMARY JUDGMENT AGAINST THE DEFENDANTS</u>**

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., and GEICO General Insurance Company (collectively "GEICO" or "Plaintiffs") respectfully submit this memorandum in support of their motion, pursuant to Fed. R. Civ. P. 56, for summary judgment against Defendants Shazam Auto Glass LLC ("Shazam Glass") and Sean Martineau ("Martineau")(collectively the "Defendants").

## SUMMARY

Shazam Glass, which is registered in Florida as a motor vehicle repair shop[1], and its sole owner, Martineau[2], purported to provide windshield replacement services ("Glass Services") to GEICO insureds in exchange for assignments of the insureds' comprehensive insurance benefits. Then, the Defendants caused Shazam Glass to bill GEICO for the Glass Services as the supposed assignee of the insureds' benefits.[3]

However, the record is clear that – although Shazam Glass purported to be registered in Florida as a motor vehicle repair shop – the Defendants operated Shazam Glass in pervasive violation of various material provisions of the Florida Motor Vehicle Repair Act (the "Repair Act", Fla. Stat. § 559.901, et seq.) Among other things, the record in this action – which the Defendants cannot legitimately controvert – demonstrates that the Defendants:

(i)     unlawfully subcontracted all of their purported Glass Services to independent contractors without notice to or consent from the relevant GEICO insureds, and

---

[1] See Declaration of René Cubas ("Cubas Decl."), ¶ 4; GEICO's Amended Complaint ("Compl."), Docket No. 17, ¶ 12.

[2] See Shazam 30(b)(6) Deposition ("Shazam Dep"), 18:3-8; 29:1-16; Deposition of Martineau ("Martineau Dep."), 22:11-14; Cubas Decl., ¶ 6; see also Verified Responses to Plaintiffs' First Interrogatories to Defendant Shazam Auto Glass, LLC, Response to Interrogatory No. 6.

[3] See Shazam Dep., 30:3-6; Martineau Dep., 23:18-21; Cubas Decl., ¶ 9.

then falsely billed GEICO for the purported Glass Services as if they actually had been provided by Shazam Glass or its employees;

(ii) falsely represented to GEICO that they had obtained valid assignments of comprehensive insurance benefits from the insureds, when in fact they had not, because the purported "consideration" for the assignments – namely Shazam Glass's actual performance of the Glass Services – was illusory, considering that Shazam Glass subcontracted all of the Glass Services to independent contractors;

(iii) in many cases, falsely represented to GEICO that they had obtained valid assignments of comprehensive insurance benefits from the GEICO insureds, when in fact they had not, because the insureds' signatures had been forged on the purported assignments of benefits;

(iv) never complied with the written estimate provisions of the Repair Act, which are designed to ensure that motor vehicle repair shops provide advance notice of the amounts they intend to charge for repairs such as Glass Services; and

(v) never complied with the invoice provisions of the Repair Act, which are designed to ensure that repair shop customers receive – among other things – actual notice of the amounts charged for repairs, and the basis for the charges.

In this context, and as discussed herein, the Repair Act is a remedial statute, designed to protect consumers and the public. As a result, numerous courts have held that repair shops which violate the Repair Act are not entitled to collect on their charges, even in quantum meruit. This Court itself previously denied the Defendants' motion to dismiss GEICO's Repair Act claim.

At bottom, all of the billing for purported Glass Services that the Defendants submitted through Shazam Glass to GEICO falsely represented that Shazam Glass was entitled to payment on the charges, when in fact Shazam Glass was never entitled to payment because it lacked valid

assignments of comprehensive insurance benefits from GEICO insureds, and because it operated in violation of various material provisions of the Repair Act.

Given these facts – which are not subject to any legitimate dispute – GEICO asserts claims against the Defendants for unjust enrichment, for violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA", Fla. Stat. § 501.201 et. seq.), and for violation of the Repair Act, itself. Through these claims, GEICO seeks to recover the more than $340,000.00 that it has paid to Shazam Glass pursuant to the Defendants' unlawful claims for Glass Services.[4] In addition, GEICO seeks a declaratory judgment against Shazam Glass, to the effect that GEICO is not liable to pay any of the outstanding charges from Shazam Glass, because of the unlawful acts set forth in the Amended Complaint. See Docket No. 17, ¶¶ 128, et seq.

As discussed more fully below, GEICO is entitled to summary judgment on its unjust enrichment, FDUTPA, Repair Act, and declaratory judgment claims.

## **ARGUMENT**

## I.    **The Standards on a Motion for Summary Judgment**

"A motion for summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." St. Luke's Cataract & Laser Inst., P.A. v. Sanderson, 2007 U.S. Dist. LEXIS 115872 at * 9 - * 10 (M.D. Fla. 2007)(Scriven, J.) "By its very terms, this standard provides that 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no genuine

---

[4] GEICO also asserts claims against Martineau for violation of the civil RICO statute (18 U.S.C. § 1962(c)) and violation of the Florida Civil Remedies for Criminal Practices Act (the "FCRCPA", Fla. Stat. § 772.103(3)), and against both Defendants for common law fraud. However, GEICO is not seeking summary judgment on its civil RICO, FCRCPA, or common law fraud claims.

issue of material fact.'" Medmarc Cas. Ins. Co. v. Spinefrontier, Inc., 2018 WL 4682785 at *1 (S.D. Fla. 2018), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis added).

In this context, "[a]n issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. … An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." FTC v. RCA Credit Servs., LLC, 727 F. Supp. 2d 1320, 1329 (M.D. Fla. 2010). As this Court has noted, on a motion for summary judgment "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." McKnight v. Clifton, 2010 U.S. Dist. LEXIS 13383 at * 5 (M.D. Fla. 2010)(Scriven, J.)(Internal quotations and citation omitted).

## II.   The Relevant Statutory and Regulatory Framework

In order to demonstrate why Plaintiffs are entitled to summary judgment, it first is necessary to discuss the pertinent statutory and regulatory framework.

### A.   Comprehensive Insurance Coverage and Claims for Glass Services

If an insured has comprehensive insurance coverage, and suffers damage to their windshield, Florida law requires automobile insurers such as GEICO to replace or repair that insured's damaged windshield with no deductible. See Fla. Stat. § 627.7288. An insured can assign their right to comprehensive insurance coverage benefits – i.e., windshield replacement – to a motor vehicle repair shop in exchange for the shop's performance of the Glass Services, and the repair shop can seek payment directly from the insurer as the insured's assignee. See Cubas Decl., ¶ 8; Amended Complaint, ECF No. 17, at ¶ 25; Answer, ECF No. 31, ¶ 1.

**B.      The Motor Vehicle Repair Act**

With limited exceptions that are not applicable in the present case, the Repair Act applies to all motor vehicle repair shops in Florida, including entities such as Shazam Glass that purport to provide Glass Services. See Fla. Stat. § 559.902. For example, the Repair Act defines "motor vehicle repair shop", in pertinent part, as "any person who, for compensation, engages or attempts to engage in the repair of motor vehicles owned by other persons and includes, but is not limited to: … self-employed individuals; … and shops doing glass work." See Fla. Stat. § 559.903(6).

Pursuant to the Repair Act, if the cost of the proposed Glass Services or other repair work will exceed $100.00, the motor vehicle repair shop must present to the customer[5] a written notice conspicuously disclosing only the following statement, in a separate, blocked section, in capital letters of at least 12-point type:

> **PLEASE READ CAREFULLY, CHECK ONE OF THE STATEMENTS BELOW, AND SIGN:**
>
> **I UNDERSTAND THAT, UNDER STATE LAW, I AM ENTITLED TO A WRITTEN ESTIMATE IF MY FINAL BILL WILL EXCEED $100.**
>
> **____ I REQUEST A WRITTEN ESTIMATE.**
>
> **____ I DO NOT REQUEST A WRITTEN ESTIMATE AS LONG AS THE REPAIR COSTS DO NOT EXCEED $_____ . THE SHOP MAY NOT EXCEED THIS AMOUNT WITHOUT MY WRITTEN OR ORAL APPROVAL.**
>
> **____ I DO NOT REQUEST A WRITTEN ESTIMATE.**
>
> **SIGNED          DATE**

See Fla. Stat. § 559.905(2).

---

[5] The Repair Act defines "customer" as the "person who signs the written repair estimate or any other person whom the person who signs the written repair estimate designates on the written repair estimate as a person who may authorize repair work." See Fla. Stat. § 559.903(1).

In the event that a motor vehicle repair shop provides the required disclosure notice to a customer pursuant to Fla. Stat. § 559.905(2), and the customer checks off one of the statements indicating that they do not request a written estimate, then the motor vehicle repair shop is not required to provide the customer with the estimated cost of the proposed repairs. See Fla. Stat. § 559.905(3). Otherwise, motor vehicle repair shops, including purported Glass Services providers such as Shazam Glass, must provide a written repair estimate to the customer, setting forth – among other things – the estimated cost of the proposed repairs if the cost of the proposed repairs will exceed $100.00 to the customer. See Fla. Stat. § 559.905(1).

Pursuant to the Repair Act, motor vehicle repair shops also must provide their customers, upon completion of any repair, with a legible copy of the invoice for the repair. Any such invoice must, among other things, set forth an "itemized description of all labor, parts, and merchandise supplied and the costs thereof", a "statement indicating what, if anything, is guaranteed in connection with the repair work and the time and mileage period for which the guarantee is effective", and the "current date and odometer reading of the motor vehicle". See Fla. Stat. § 559.911.

The Repair Act also imposes various prohibitions on motor vehicle repair shops – such as Shazam Glass – that purport to provide Glass Services. Among other things, the Repair Act:

(i)     prohibits motor vehicle repair shops – with limited exceptions that are not applicable here – from engaging or attempting to engage in Glass Services or other forms of motor vehicle repair work without first being registered with the Florida Department of Agriculture and Consumer Services (see Fla. Stat. §§ 559.904(1), 559.920(1));

(ii)    prohibits motor vehicle repair shops from subcontracting Glass Services or other repair work without the knowledge or consent of the customer, unless the motor vehicle repair shop or employee thereof demonstrates that the customer could not reasonably have been notified (see Fla. Stat. § 559.920(14));

(iii)     prohibits motor vehicle repair shops from making or charging for repairs which have not been expressly or impliedly authorized by the customer (see Fla. Stat. § 559.920(2));

(iv)     prohibits motor vehicle repair shops from making or authorizing in any manner or by any means whatever any written or oral statement which is untrue, deceptive or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue, deceptive or misleading (see Fla. Stat. § 559.920(8));

(v)      prohibits motor vehicle repair shops from causing or allowing a customer to sign any work order that does not state the repairs requested by the customer or the automobile's odometer reading at the time of repair (see Fla. Stat. § 559.920(11));

(vi)     prohibits motor vehicle repair shops from failing or refusing to give to a customer a copy of any document requiring the customer's signature upon completion or cancellation of the repair work (see Fla. Stat. § 559.920(12)); and

(vii)    prohibits motor vehicle repair shops from performing any other act that is a violation of the Repair Act or that constitutes fraud or misrepresentation (see Fla. Stat. § 559.920(17)).

## C.      Repair Shops that Violate the Repair Act May Not Collect on Their Charges

It is well-settled that motor vehicle repair shops that violate the Repair Act are not entitled to receive payment for repair work – such as Glass Services – even if the repair work otherwise was legitimately and actually performed.

For example, in Osteen v. Morris, 481 So. 2d 1287 (Fla. 5th DCA 1986), the repair shop customer never received either a written estimate, or written notice of his right to a written estimate, as required by the Repair Act. See id., 481 So. 2d at 1288. However, the customer did receive an oral estimate, and – after receiving the oral estimate – the customer actually authorized the repair work. Id., at 1289. After the repair work was complete, the customer paid only about half of the resulting charges, and refused to pay the remaining balance. Id. The repair shop then filed suit to collect the remaining balance, and the customer counterclaimed to recover the partial payment that he already had made. Id. The trial court ruled in favor of the customer, holding that – because the repair shop had failed to comply with the Repair Act – it was not entitled to recover

the remaining balance on its repair bill, even in quantum meruit, and it also had to refund the customer's partial payment. Id. The repair shop appealed, but the District Court of Appeals affirmed the trial court, holding that:

> The shop violated the provisions of sections 559.901-923, Florida Statutes [i.e., the Repair Act]. The customer's only injury is that he paid the shop for services for which he was not liable due to the shop violating the [Repair Act]. The customer has received $1,490 worth of motor vehicle repair work at a cost of $50. However, if the customer is held legally liable when the shop has disregarded the provisions of the statute, the shop could effectively disregard the intention of the legislature as evidenced by the provisions of this act.

> Quantum meruit is the name for the legal doctrine which, in the absence of an express agreement, imposes legal liability on a contract that the law implies from facts where one receives goods or services from another under circumstances where in the normal course of common affairs a reasonable person receiving such benefit would ordinarily expect to pay for it. This consumer protection statute [i.e., the Repair Act] must necessarily be construed to be a limitation on the common law principle of quantum meruit because the recognition of a quasi-contractual obligation by the law in this situation would necessarily circumvent the very dictates of the statute by enabling a motor vehicle repair shop to ignore the statutory requirements of providing a written estimate or obtaining a written waiver.

> A statute is construed so as to effectuate the intent of the legislature. It was apparently the intent of the legislature to protect consumers against misunderstandings arising from oral estimates of motor vehicle repairs and the legal disputes and litigation that result from the "fait accompli" nature of claims for repair work already done. We do not suggest that the result in this case is fair to the shop. We only agree with the trial court that this result appears to be mandated in this case by the statute. In the situation addressed by the legislature - the elimination of the legal problem caused to both the customer and the repair shop when repairs are made without a clear written estimate given before the repairs are undertaken - the legislature cannot help the consumer without endangering justice to the repairman in a given case. In such instances the court must carry out the intent of the legislature and cannot do what the court may feel is justice in the case.

Id., at 1289-1290.

Along similar lines, in Gonzalez v. Tremont Body & Towing, Inc., 483 So. 2d 503 (Fla. 3d DCA 1986), the appellant customer sought review of a trial court decision awarding damages, in quantum meruit, to a repair shop that had not complied with the Repair Act's written estimate requirements. See id., 483 So. 2d at 504. The District Court of Appeals reversed the trial court, holding that, "[o]n the authority of the well-considered decision in Osteen v. Morris, 481 So. 2d

1287 (Fla. 5th DCA 1986), we reverse the judgment awarded the appellee automobile repair shop on a quantum meruit basis notwithstanding its admitted failure to conform with the written repair estimate requirements contained in section 559.905 of the Motor Vehicle Repair Act." Id.; see also Safari Tours, Inc. v. Pasco, 255 So. 3d 415, 417 (Fla. 3d DCA 2018)(repair shop that failed to comply with Repair Act was not entitled to recover on its charges); Perez-Priego v. Bayside Carburetor & Ignition Corp., 633 So. 2d 1190, 1191 (Fla. 5th DCA 1994)("Petitioner is correct that, under Florida law, a consumer who is not given a written estimate may recover the amount of the repair bill and still retain the benefit of the repairs."); 1616 Sunrise Motors, Inc. v. A-Leet Leasing of Florida, 547 So. 2d 267 (Fla. 4th DCA 1989)(affirming trial court decision denying recovery to repair shop that violated the Repair Act's prohibition against making or charging for repairs without the express or implied authorization of the customer); Git R Done Concrete Cutting, LLC v. Swinsons Car Care Center, Inc., 22 Fla. L. Weekly Supp. 226a (Fla. 9th Jud. Cir. July 30, 2014)(repair shop that failed to comply with the Repair Act was not entitled to recover on its charges); Reynolds v. Gorilla Motors, Inc., 11 Fla. L. Weekly Supp. 1047a (Fla. 15th Jud. Cir. August 31, 2004)("Under Florida law, a repair shop that fails to comply with Florida Statute 559.901 et seq. may not recover or retain the amount of the repair bill, despite the fact that the customer obtains a benefit and the overall result appears unjust.")

In this context, and as noted above, the Repair Act is a remedial statute. See, e.g., Raymar Constr. Co. v. Lopez-Soto, 547 So. 2d 282, 284 (Fla. 2d DCA 1989). "[R]emedial statutes are entitled to a liberal construction so as to advance the remedy provided where it is consistent with the legislative purpose." Id. Put another way, "[i]f a statute is considered remedial, it should be given a liberal interpretation and should be construed to give the terms used the most extensive meaning to which they are reasonably susceptible. Remedial statutes are to be interpreted in favor

of granting access to the remedy provided by the Legislature". <u>Starling v. R.J. Reynolds Tobacco Co.</u>, 845 F. Supp. 2d 1215, 1232 (M.D. Fla. 2011).

Accordingly, courts have rejected attempts to impose a narrow construction on the Repair Act, which would tend to permit the kinds of improper repair shop conduct that the Repair Act was designed to address. <u>See</u>, <u>e.g.</u>, <u>1616 Sunrise Motors, Inc.</u>, <u>supra</u> (rejecting narrow construction of the term "customer" in the Repair Act, where the narrow construction would undermine the purposes of the statute); <u>Raymar Constr. Co.</u>, <u>supra</u> (reversing trial court, which improperly had imposed a narrow construction on the term "consumer transaction" in the Repair Act).

### III.   GEICO is Entitled to Summary Judgment against the Defendants

Against this statutory and regulatory backdrop, the facts set forth in GEICO's Statement of Undisputed Facts cannot legitimately be disputed, and entitle GEICO to summary judgment against the Defendants.

### A.   The Facts in the Record Demonstrate that the Defendants Operated Shazam Glass in Pervasive Violation of the Repair Act

As set forth above, it is clear that motor vehicle repair shops that violate the Repair Act are not entitled to recover on their charges, even in <u>quantum</u> <u>meruit</u>, and even if the underlying repairs otherwise were legitimately and actually performed. <u>See</u>, <u>e.g.</u>, <u>Osteen</u>, <u>Gonzalez</u>, <u>Safari Tours, Inc.</u>, <u>Perez-Priego</u>, <u>Reynolds</u>, <u>Git R Done Concrete Cutting, LLC</u>, <u>1616 Sunrise Motors, Inc.</u>, <u>supra</u>. Defendant Martineau was aware that Shazam Glass – as a motor vehicle repair shop – was required to comply with the Florida Motor Vehicle Repair Act. <u>See</u> Deposition of Sean Martineau, January 10, 2019, in <u>Page 42, LLC et al vs. GEICO Casualty Insurance Company, et al</u>, Case No. 17-CC-008354, 80:6-9.

In this context, Plaintiffs respectfully submit that there is no genuine issue of material fact as to whether the Defendants operated Shazam Glass in pervasive violation of various important provisions of the Repair Act.

1.      **The Defendants Subcontracted all of the Glass Services to Independent Contractors Without the Knowledge or Consent of GEICO or the GEICO Insureds, and then Falsely Represented in the Resulting Billing that Shazam Glass Had Performed the Glass Services**

Though Shazam Glass purported to be a motor vehicle repair shop, it did not maintain any physical facilities – such as an actual repair shop or repair bays – for the actual performance of Glass Services. See Martineau Dep., 28:4-16; Shazam Dep., 10:6-19.

Nor did Shazam Glass ever actually have any employees replace any windshields for any GEICO insureds. See Shazam Dep., 30:20-24; 31:6-10. Shazam Glass never had any employees at all, and Martineau himself never replaced any windshields for any Insureds. See Shazam Dep., 31:12-14, 18-23; Martineau Dep., 24:2-5; 33:8-9. In fact, Shazam Glass was incapable of actually providing any windshield replacements to GEICO insureds, considering that it did not own or lease any windshield repair or replacement equipment. See Shazam Dep., 55:20-22; 56:6-7; Martineau Dep., 64:11-16.

Rather, all of the Glass Services that were billed through Shazam Glass to GEICO were performed – to the extent that they were performed at all – by independent contractors to whom the Defendants had subcontracted the Glass Services. See Shazam Dep., 30:20-24; Martineau Dep., 33:2-9.

The Defendants generally did not do any due diligence on, or check the references of, the independent contractors to whom they subcontracted the Glass Services. See Shazam Dep., 47:16-25; 48:6-10; Martineau Dep., 49:15-25; 50:1-13. The independent contractors who purported to perform the Glass Services that were billed through Shazam Glass to GEICO typically had their

own windshield repair/replacement shops, which themselves were registered as motor vehicle repair shops with the Florida Department of Agriculture and Consumer Services. See Martineau Dep., 46:19-22; 49:1-6.  However, at least three independent contractors who purported to perform Glass Services that were billed through Shazam – namely Matthew Josi, Franklin Sawyer, and Blaise Makkreel – were not affiliated with any windshield replacement or motor vehicle repair shops, and were not themselves ever registered as motor vehicle repair shops with the Florida Department of Agriculture and Consumer Services. See Shazam Dep., 38:9-13; 39:7-12; Martineau Dep., 38:17-25; 39:8-9; Cubas Decl., ¶ 17. Even so, the Defendants subcontracted Glass Services to them, as well, despite the fact that the performance of Glass Services by these unregistered independent contractors violated Fla. Stat. § 559.904. Id.

These independent contractors used their own equipment and vehicles when they purported to perform the Glass Services that had been subcontracted to them by Shazam Glass. See Shazam Dep., 55:20-22; 56:6-7, 13-15; Martineau Dep., 64:11-21. The Defendants did not provide any kind of training or instructions to these independent contractors. See Shazam Dep., 46:16-18; 49:3-5; Martineau Dep., 51:19-22; 58:6-14; 67:21-25; 68; see also Deposition of Sean Martineau, January 10, 2019, in Page 42, LLC et al vs. GEICO Casualty Insurance Company, et al, Case No. 17-CC-008354: 28:16-19; 91:19-25; 92:6-8. Nor did the Defendants do anything to evaluate the work of the independent contractors who purported to perform the Glass Services. See Shazam Dep., 49:3-5.

The Defendants had contact information for the GEICO insureds, and obviously had the ability to advise the insureds that Shazam Glass intended to subcontract the Glass Services to independent contractors, and to obtain the insureds' consent to the subcontracting. See Martineau Dep., 98:17-19; Cubas Decl., ¶ 19. However, the Defendants themselves did not inform the Insureds that Shazam Glass had subcontracted the Glass Services to independent contractors. See

Shazam Dep., 65:7-24. Moreover – though the Defendants contend that they supposedly "verbally" instructed the independent contractors to tell the insureds about the subcontracting – the Defendants never did anything to verify that the independent contractors who purported to perform the Glass Services <u>actually ever did</u> tell the GEICO insureds that they were independent contractors, or that Shazam had subcontracted the Glass Services to independent contractors. <u>See</u> Shazam Dep., 53:13-25; 54:23-25; 55:1-19. In fact, the Defendants admitted that they do not know whether the independent contractors who purported to perform the Glass Services for GEICO insureds ever told the insureds that they were independent contractors, or that Shazam Glass had subcontracted the Glass Services to independent contractors. <u>See</u> Shazam Dep., 54:23-25; 55:1-19.[6]

Nor did the GEICO insureds ever receive any written documentation to inform them that the Glass Services had been subcontracted to independent contractors. <u>See</u> Shazam Dep., 54:23-25; 55:1-19; Martineau Dep., 92:2-9. To the contrary, when the independent contractors purported to perform Glass Services that were billed through Shazam Glass to GEICO, they purported to provide a work order to the insureds at the time when the Glass Services were performed. <u>See</u> Shazam Dep., 77:16-22. Each such work order was prominently labeled "SHAZAM AUTO GLASS LLC", and contained no mention of any subcontracting. <u>See</u> Shazam Dep., 78:15-17; Cubas Decl., ¶ 21. Each such work order contained an assignment of insurance benefits that the Insureds purportedly signed, which represented that the Insureds were assigning their

---

[6] Aside from the fact that the Defendants, themselves, have no idea whether the independent contractors who purported to perform the Glass Services actually ever <u>did</u> tell the GEICO insureds that they were independent contractors, or that Shazam had subcontracted the Glass Services to independent contractors, one of the independent contractors – Anthony White – testified that when he would perform Glass Services that were billed through Shazam, he would tell the insureds that he was "Tony from Shazam". <u>See</u> Shazam Dep., 40:5-25; 46:24-25; 47:1-10; Deposition of Anthony White ("White Dep.") 7:7-14; 16:20-21; 19:6-13; 24:8-16, 23-25; 25:1-6; 28:7-9; 30:19-23.

comprehensive insurance benefits to <u>Shazam</u>, "in consideration for the glass repairs performed by" Shazam. <u>See</u> Shazam Dep., 78:15-17; Cubas Decl., ¶¶ 10, 21.

Even so, all of the insurance claims submitted through Shazam Glass to GEICO for Glass Services allegedly provided to GEICO insureds falsely represented that Shazam Glass itself had performed the Glass Services. <u>See</u> Cubas Decl., ¶ 10.

These facts are drawn primarily from the Defendants' deposition testimony in this action, and are not subject to any real dispute. Accordingly, it is clear that, in each claim for Glass Services that the Defendants submitted to GEICO: (i) the Defendants unlawfully subcontracted the Glass Services to an independent contractor without actual notice to or consent from the relevant GEICO insureds; and then (ii) falsely and unlawfully represented, in the resulting billing, that the Glass Services actually had been performed by Shazam Glass. <u>See</u> Fla. Stat. § 559.920(8), (14)(providing that it is unlawful under the Repair Act to "[h]ave repair work subcontracted without the knowledge or consent of the customer unless the motor vehicle repair shop or employee thereof demonstrates that the customer could not reasonably have been notified" and to "[m]ake or authorize in any manner or by any means whatever any written or oral statement which is untrue, deceptive or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue, deceptive or misleading").

## 2. The Defendants Never Complied with the Written Estimate Provisions of the Repair Act

What is more, though the cost of the Glass Services billed through Shazam Glass always exceeded $100.00, the Defendants never provided any written notices to GEICO or its insureds, conspicuously disclosing <u>only</u> the following statement, in a separate, blocked section, in capital letters of at least 12-point type, as required by Fla. Stat. § 559.905(2):

**PLEASE READ CAREFULLY, CHECK ONE OF THE STATEMENTS BELOW, AND SIGN:**

**I UNDERSTAND THAT, UNDER STATE LAW, I AM ENTITLED TO A WRITTEN ESTIMATE IF MY FINAL BILL WILL EXCEED $100.**

    **____ I REQUEST A WRITTEN ESTIMATE.**

    **____ I DO NOT REQUEST A WRITTEN ESTIMATE AS LONG AS THE REPAIR COSTS DO NOT EXCEED $_____ . THE SHOP MAY NOT EXCEED THIS AMOUNT WITHOUT MY WRITTEN OR ORAL APPROVAL.**

    **____ I DO NOT REQUEST A WRITTEN ESTIMATE.**

**SIGNED          DATE**

See Shazam Dep., 77:16-25; 78:1-7; 92:4-9; 95:16-19; Cubas Decl., ¶¶ 18, 20, 22; Martineau Dep., 89:1-4; 97:23-25; 98:1-6.

Nor did the Defendants ever provide GEICO or its insureds with any written estimate of how much they intended to charge for the Glass Services. See Martineau Dep., 89:1-4; Shazam Dep., 77:16-25, 78:1-7; 95:16-19; 97:23-25; 98:1-6; Cubas Decl., ¶ 22; Shazam Dep., 77:24-25; 78:1-7; 95:16-19.

These facts likewise are not subject to any legitimate dispute. Accordingly, it is clear that, in each claim for Glass Services that the Defendants submitted to GEICO: (i) the Defendants violated the written disclosure requirements of Fla. Stat. § 559.905(2), which – because the cost of repairs exceeded $100.00 – required them to provide a specific disclosure, in a specific form, advising the GEICO insureds of their ability to receive or waive a written estimate; and (ii) the Defendants also violated Fla. Stat. § 559.905(1), which – because the Defendants never obtained signed waivers, and the cost of the proposed repairs exceeded $100.00 – required them to provide written estimates setting forth the estimated cost of the proposed repairs.

In this context, it is worthwhile to note that the written disclosure requirements in Fla. Stat. § 559.905(2) apply whenever the "cost of repair work will exceed $100", whereas the written estimate provisions of Fla. Stat. § 559.905(1) only are applicable if "the cost of … repair work will exceed $100 to the customer". (Emphasis added). Accordingly, the Defendants may contend that: (i) it is GEICO's insureds, rather than GEICO, itself, that are the "customers"; (ii) though the cost of the Glass Services always exceeded $100.00 to GEICO in its capacity as the insurer, GEICO's insureds – the putative "customers" – never had to pay anything for the Glass Services; and therefore (iii) the written estimate provisions of Fla. Stat. § 559.905(1) – which apply when the cost of repair work "will exceed $100 to the customer" – are inapplicable.[7]

However, Florida District Courts of Appeals have rejected these same kinds of attempts to circumvent the purpose of the Repair Act though an improperly narrow construction of its terms. A case in point is 1616 Sunrise Motors, Inc., supra, in which a car rental agency leased an automobile to a driver. 547 So. 2d at 268. There was an accident, and the automobile was towed to a repair shop, evidently at the request of the driver/lessee. Id. Without obtaining the verbal or written authorization of the driver/lessee, the repair shop repaired the vehicle. Id. Thereafter, the driver/lessee failed to respond to the repair shop's requests to pay for the repair and retrieve the vehicle. Id. As a result, the repair shop filed suit against the car rental agency to recover the costs of the repairs and vehicle storage. Id. However, the trial court found that the repair shop was precluded from recovery, because it had violated Fla. Stat. § 559.920(2) by performing repairs without the authorization of the "customer" – i.e., the driver/lessee. Id. On appeal, the repair shop argued that: (i) the Repair Act only precluded the shop from holding the "customer" liable for the

---

[7] As set forth above, while the written estimate provisions of Fla. Stat. § 559.905(1) apply when the cost of repair work "will exceed $100 to the customer", the notice provisions of Fla. Stat. § 559.905(2) are applicable in any case where the cost of repairs will exceed $100, whether or not a "customer" will be responsible for the costs.

repairs; (ii) the car rental agency/lessor did not meet the statutory definition of "customer"; and therefore (iii) the repair shop could recover the costs of the repair from the car rental agency/lessor, even if it could not recover the costs of the repair from the driver/lessee or "customer". Id. The District Court of Appeals rejected this argument, holding that:

> under the circumstances of this case, the requirements of the [Repair Act] cannot be avoided by permitting recovery by the errant repair shop against an owner-lessor who may not be a "customer" within the definition portion of the Act. The repair transaction involved herein is one that is covered by the Act. A holding to the contrary would undermine the purposes of the Act.

Id.; see also Raymar Constr. Co., supra (reversing trial court, which improperly had imposed a narrow construction on the term "consumer transaction" in the Repair Act); Results Real Estate, Inc. v. Lazy Days R.V. Center, Inc., 505 So.2d 587 (Fla. 2d DCA 1987)(holding that trial court construed consumer statute too narrowly by finding corporations ineligible for consumer protection).

**3.    The Defendants Never Complied with the Work Order and Invoice Provisions of the Repair Act**

Furthermore, upon the completion of the purported Glass Services, neither the Defendants nor any other person ever provided any GEICO insureds with any invoices for the Glass Services. See Cubas Decl., ¶ 23; Shazam Dep., 84:8-14; 85:5-17; Martineau Dep., 90:19-22. Nor – by extension – did the Defendants or anyone else ever provide any GEICO insureds with invoices in the form required by the Repair Act, containing – among other things – the "current date and odometer reading of the motor vehicle", a "statement indicating what was done to correct the problem or a description of the service provided", an "itemized description of all labor, parts, and merchandise supplied and the costs thereof, indicating what is supplied to the customer without cost or at a reduced cost because of a shop or manufacturer's warranty", a "statement identifying any replacement part as being used, rebuilt, or reconditioned, as the case may be", a "statement

indicating what, if anything, is guaranteed in connection with the repair work and the time and mileage period for which the guarantee is effective". See Cubas Decl., ¶ 24.[8]

These facts are not subject to any real dispute, either. Accordingly, it is clear that – in each claim for Glass Services that the Defendants submitted to GEICO – the Defendants also violated the invoice requirements of Fla. Stat. § 559.911.

**B.    The Facts in the Record Demonstrate that the Defendants Lacked Valid Assignments of Benefits from GEICO Insureds.**

In addition, the facts in the record demonstrate that Shazam Glass lacked valid assignments of benefits from the GEICO insureds, and therefore never was entitled to collect on the Defendants' claims for Glass Services. In particular, it is clear that every assignment of insurance benefits that the insureds purportedly signed represented that the insureds were assigning their comprehensive insurance benefits to Shazam Glass "in consideration for the glass repairs performed by" Shazam Glass. See Shazam Dep., 77:16-22; 78:15-17; Cubas Decl., ¶¶ 10, 21. However, it likewise is clear that Shazam Glass did not "perform" – and could not have "performed" – any Glass Services for a single GEICO insured. See Martineau Dep., 24:2-5; 28:4-16; 33:8-9; 64:11-16; Shazam Dep., 10:6-19; 30:20-24; 31:6-14, 18-23; 55:20-22; 56:6-7. In addition, it is clear that – in violation of the Repair Act – the Defendants never obtained the insureds' consent to the subcontracting, and have no idea whether any of the insureds even knew that Shazam Glass had subcontracted the purported Glass Services to independent contractors. See Cubas Decl., ¶¶ 10, 19; Shazam Dep., 53:13-25; 54:23-25; 55:1-19; 65:7-24; Martineau Dep., 58:6-14; 67:21-25; 68:1, 92:2-9; 98:17-19; see also Deposition of Sean Martineau, January 10, 2019, in Page 42, LLC et al vs. GEICO Casualty Insurance Company, et al, Case No, 17-CC-008354: 28:16-19; 91:19-25; 92:6-8. It

---

[8] The Defendants also permitted insureds to sign work orders/assignment of benefits forms that did not state the automobiles' odometer readings, in further violation of the Repair Act. See Shazam Dep., 95:20-25; Martineau Dep., 81;15-18; Fla. Stat. § 559.920 (making it unlawful for any repair shop to "[c]ause or allow a customer to sign any work order that does not state … the automobile's odometer reading at the time of repair … .")

likewise is clear that the Defendants not only subcontracted all of the Glass Services to independent contractors, but that the Defendants did no due diligence whatsoever on the independent contractors, and provided no training or oversight to the independent contractors. See Shazam Dep., 47:16-25; 48:6-10; Martineau Dep., 49:15-25; 50:1-13. To the extent that the GEICO insureds ever purported to assign their insurance benefits to Shazam Glass in the first place, the assignments were made – explicitly – in consideration for Glass Services that were to be "performed by" Shazam Glass, not by some third-party independent contractor with no oversight by Shazam Glass. See Shazam Dep., 77:16-22; 78:15-17; Cubas Decl., ¶¶ 10, 21. Because Shazam Glass did not – in fact – perform any Glass Services for the GEICO insureds, all of the purported "assignments" of the insureds' insurance benefits to Shazam Glass were invalid for lack of consideration and mutual assent. See, e.g., Rubinstein v. Keshet Inter Vivos Trust, 2018 U.S. Dist. LEXIS 185666 at * 33 (S.D. Fla. 2018)(noting that, under Florida law, an assignment is considered a contract and must be supported by consideration to be valid); Petersen v. Am. Gen. Life Ins. Co., 2016 U.S. Dist. LEXIS 202728 at * 8 (M.D. Fla. 2016)(granting summary judgment for defendant on breach of contract claim, where "[n]o meeting of the minds took place, as required by black letter contract law."); University Creek Assocs. II, Ltd. v. Boston Am. Fin. Group, Inc., 100 F. Supp. 2d 1337, 1340 (S.D. Fla. 1998)("A binding and enforceable contract requires mutual assent to certain and definite contractual terms; without a meeting of the minds on all of the essential terms, no enforceable contract arises.")(Internal quotations and citation omitted).

Moreover, in a number of cases, it is clear that the GEICO insureds did not even sign any assignments of benefits at all, and that the insureds' signatures were forged on the assignments of benefits that the Defendants submitted through Shazam Glass in support of their claims for Glass Services. In particular, 15 GEICO insureds – namely Kimberly Timmerman, Kenneth Stubbs, George Spriggs, Daniel Havelin, Nia Queen, Traci Mosley, Jose Irizarry, Santiago Hernandez,

Sharon Hardy, Arthur Abbott, Jonathon Ford, Abigal Favata, Audra Diaz, Mark Stys, and Nicole Caride– swear that they never signed the purported assignments of benefits submitted through Shazam Glass to GEICO. See Cubas Decl., ¶¶ 27-29.

**C.     GEICO is Entitled to Summary Judgment on its First Cause of Action for a Declaratory Judgment**

GEICO's First Cause of Action seeks a declaratory judgment that Shazam Glass has no right to receive payment for any pending bills submitted to GEICO because – among other things – Shazam Glass is not and never has been in compliance with the Repair Act, did not actually provide the Glass Services at issue, and lacked valid assignments of benefits from the GEICO insureds. Given the facts set forth above – which are not subject to any real dispute – GEICO is entitled to summary judgment on that claim.

First, it is undisputed that Shazam Glass is actively attempting to collect on unpaid charges it submitted to GEICO, which GEICO contends are unlawful and ineligible for reimbursement. See Cubas Decl., ¶ 13. As a result, there is definitely "a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." LM Ins. Corp. v. Occidental Fire & Cas. Co., 2020 U.S. Dist. LEXIS 86924 at * 8 (M.D. Fla. 2020).

Second, it is clear that a plaintiff-insurer can obtain a declaratory judgment to the effect that it is not liable to pay outstanding insurance billing as the result of a service provider's violations of Florida law. See State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, 739 F.3d 579, 584 (11th Cir. 2013)(affirming declaratory judgment for insurer, to the effect that the insurer was not liable to pay pending billing from healthcare provider that operated in violation of Florida law); Clear Vision Windshield Repair, L.L.C., supra at *11 - *12 (denying motion to dismiss GEICO's declaratory judgment claim, which sought a declaration that it was not required to pay

outstanding insurance billing for Glass Services because of the unlawful activity alleged in the complaint); State Farm Mut. Auto. Ins. Co. v. Comprehensive Physician Servs., 2014 U.S. Dist. LEXIS 172824 at *7 - *8  (M.D. Fla. 2014)(denying motion to dismiss plaintiff-insurer's declaratory judgment claim, seeking a declaration that it was not liable to pay any pending, unlawful billing). As this Court itself noted when denying the Defendants' motion to dismiss in the present case, "courts have routinely allowed insurer-plaintiffs to pursue similar forms of declaratory relief." See ECF No. 29, p. 11.

Third, and as the record here amply demonstrates, at all relevant times the Defendants operated in pervasive violation of the Repair Act, inasmuch as they: (i) subcontracted all of the purported Glass Services to independent contractors without notice to or consent from GEICO or the relevant GEICO insureds, in violation of Fla. Stat. § 559.920(14); (ii) falsely represented to GEICO – in every claim – that they had obtained valid assignments of comprehensive insurance benefits from the GEICO insureds, when in fact they had not obtained valid assignments, in violation of Fla. Stat. § 559.920(8); (iii) violated – in every claim – the written estimate and estimate waiver provisions of the Repair Act, in violation of Fla. Stat. § 559.905(1) and (2); and (iv) violated – in every claim – the invoice provisions of the Repair Act, in violation of Fla. Stat. § 559.911.

Fourth – and again, as the record here amply demonstrates – the Defendants lack valid assignments of benefits from the GEICO insureds, and – as a result – lack standing to collect on their Glass Services charges in the first instance.

Against this backdrop, Shazam Glass – as a matter of law – is not entitled to collect on any of the outstanding billing for Glass Services that the Defendants have submitted to GEICO.  See, e.g., Osteen, Gonzalez, Safari Tours, Inc., Perez-Priego, Reynolds, Git R Done Concrete Cutting,

LLC, 1616 Sunrise Motors, Inc., Rubinstein, Peterson, University Creek Assocs. II, Ltd., supra. GEICO therefore is entitled to summary judgment on its declaratory judgment claim.

**D.      GEICO is Entitled to Summary Judgment on its Sixth Cause of Action for Unjust Enrichment**

GEICO's Sixth Cause of Action seeks damages from the Defendants for unjust enrichment. In light of the undisputed facts set forth above, GEICO is entitled to summary judgment on that claim as well.

To establish the elements of a cause of action for unjust enrichment, GEICO must prove that: "(1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." Fedex Techconnect, Inc. v. Camsing Global LLC, 2014 U.S. Dist. LEXIS 198024 at * 8 (M.D. Fla. 2014)(Scriven, J.), quoting Tooltrend, Inc. v. CMT Utensili, SRL, 198 F.3d 802, 805 (11th Cir. 1999).

In this context, it is clear that the Defendants operated Shazam Glass in pervasive violation of several material provisions of the Repair Act. It likewise is clear that a repair shop that operates in violation of the Repair Act is not entitled to collect on its charges, even in quantum meruit, and must refund any payments that it has received. See, e.g., Osteen, Gonzalez, Safari Tours, Inc., Perez-Priego, Reynolds, Git R Done Concrete Cutting, LLC, 1616 Sunrise Motors, Inc., Rubinstein, Peterson, University Creek Assocs. II, Ltd., supra; see also State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d 1303, 1312-1313 (M.D. Fla. 2014)(holding that unlawfully rendered services cannot qualify as adequate consideration to defeat an unjust enrichment claim); State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, Inc., 2011 U.S. Dist. LEXIS 145629 at *16 (M.D. Fla. 2011)(holding that – as the result of the defendants'

conduct – the plaintiff-insurer mistakenly paid claims it was entitled to deny, and it therefore would be inequitable to permit the defendants to retain the payments); State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc., 2011 U.S. Dist. LEXIS 146926 at * 13 (M.D. Fla. 2011)(holding that insurer did not bargain for unlawfully rendered services, and the defendant service provider's retention of payments for these services was sufficient to support a cause of action for unjust enrichment); Gov't Emples. Ins. Co. v. Clear Vision Windshield Repair, L.L.C., 2017 U.S. Dist. LEXIS 47353 at * 14 (M.D. Fla. 2017)(sustaining unjust enrichment claim in similar case involving unlawful billing for Glass Services, and noting that GEICO's "remedy is unjust enrichment"). It also is clear that Shazam Glass never had any right to payment from GEICO, because it lacked any valid assignments of insurance benefits from any GEICO insureds.

Even so, it is undisputed that between January 2016 and mid-2019, GEICO paid Shazam Glass $341,574.76 on claims for the Glass Services that Shazam Glass purported to provide to GEICO Insureds, including more than $180,000.00 in payments by GEICO General Insurance Company, more than $123,000.00 in payments by GEICO Indemnity Co., and more than $38,000.00 in payments by Government Employees Insurance Company. See Cubas Decl., ¶ 11. GEICO was entitled to deny these claims for Glass Services, and – for the reasons set forth herein – it would be inequitable to permit the Defendants to retain the proceeds of their unlawful activities. Accordingly, GEICO is entitled to summary judgment on its unjust enrichment claim.

**E.    GEICO is Entitled to Summary Judgment on its Third Cause of Action for Violation of the FDUTPA**

GEICO's Third Cause of Action seeks damages, costs, and reasonable attorneys' fees from the Defendants based on their violations of the FDUTPA. Given the facts set forth above, GEICO is entitled to summary judgment on its FDUTPA claim.

First, it is clear that a plaintiff-insurer may recover damages under the FDUTPA based on evidence that a defendant misrepresented its compliance with Florida law and entitlement to recover insurance benefits in the first instance. See, e.g., State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d 1303, 1313 (M.D. Fla. 2014)(observing that the FDUTPA is to be "liberally construed", and rejecting motion to dismiss plaintiff-insurer's FDUTPA claims based on insurance fraud scheme); State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., 103 F. Supp. 3d 1343, 1354-1355 (S.D. Fla. 2015)(granting plaintiff-insurer summary judgment on FDUTPA claim, where "Defendants engaged in unfair and deceptive acts and practices in the conduct of their trade and commerce by unlawfully operating medical clinics, in violation of Florida law.")

Second, GEICO has demonstrated its entitlement to summary judgment on its FDUTPA claim. To establish a claim under the FDUTPA, GEICO must prove : "(1) a deceptive act or unfair practice, (2) causation, and (3) actual damages." Gov't Emples. Ins. Co. v. KJ Chiropractic Ctr. LLC, 2013 U.S. Dist. LEXIS 185731 at * 20 (M.D. Fla. 2013). In this context, "[a] deceptive act or practice is "one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Med. Serv. Ctr. of Fla., supra, 103 F. Supp. 3d at 1354.

Third – and in contrast to a common law fraud claim – a claim under the FDUTPA does not require fraudulent intent, or that the defendant had actual knowledge that its practices were deceptive or unfair. See, e.g., Gavron v. Weather Shield Mfg., 819 F. Supp. 2d 1297, 1302 (S.D. Fla. 2011)(rejecting argument that actual knowledge was an element of a FDUTPA claim); Gastaldi v. Sunvest Resort Cmtys., LC, 2010 U.S. Dist. LEXIS 9876 at * 54 (S.D. Fla. 2010)("The Plaintiffs are correct that an act or practice may be deceptive under the FDUTPA irrespective of a defendant's good faith or intent to deceive … .") Nor does a FDUTPA claim require reasonable

reliance. See, e.g., Carriuolo v. GM Co., 823 F.3d 977, 985 (11th Cir. 2016)("[A] plaintiff asserting a FDUTPA claim need not show actual reliance on the representation or omission at issue ….")(Internal quotations and citation omitted).

As set forth above, the record evidence demonstrates that the Defendants engaged in numerous deceptive acts and unfair practices. This conduct was deceptive because it was likely to – and did – mislead GEICO into believing that it had an obligation to pay $341,574.76 worth of the Defendants' Glass Services charges, when in fact GEICO had no such obligation. See Cubas Decl., ¶ 11. What is more, the Defendants' conduct amounted to unfair practices because it offended established public policy, as set forth in the Repair Act's provisions regarding subcontracting, misleading statements, written estimates, work orders, and invoices. Moreover, the Defendants' conduct amounted to unfair practices because it was unscrupulous and substantially injurious to consumers – not only GEICO, but also the GEICO insureds who had their "signatures" forged on assignments of benefits, or who were led to believe that Shazam Glass would perform the Glass Services, when in fact the Glass Services were subcontracted to unsupervised, untrained, and in some cases unregistered third-parties without their knowledge or consent.

In this context, federal courts in Florida have granted summary judgment to plaintiff-insurers on FDUTPA claims under analogous circumstances. See, e.g., State Farm Mut. Auto. Ins. Co. v. First Care Solution, Inc., 232 F. Supp. 3d 1257, 1268-1269 (granting summary judgment to plaintiff-insurer on FDUTPA claim, where the facts indicated that the defendant engaged in unfair and deceptive acts and practices by obtaining payment for services that the insurer had a right to deny as unlawfully rendered); Med. Serv. Ctr. of Fla., 103 F. Supp. 3d at 1354-1355 (same). Summary judgment on GEICO's FDUTPA claim is similarly warranted in this case.

**F.     GEICO is Entitled to Summary Judgment on its Seventh Cause of Action for Violation of the Repair Act**

GEICO also is entitled to summary judgment on its Seventh Cause of Action for violation of the Repair Act. In particular, GEICO is entitled to summary judgment under Fla. Stat. § 559.921, which provides a private right of action to "[a]ny customer injured by a violation of this part".

As discussed above, it is clear from the record in this action that the Defendants operated Shazam Glass in violation of several material provisions of the Repair Act. It likewise is clear that a repair shop that operates in violation of the Repair Act is not entitled to collect on its charges. See, e.g., Osteen, Gonzalez, Safari Tours, Inc., Perez-Priego, Reynolds, Git R Done Concrete Cutting, LLC, 1616 Sunrise Motors, Inc., Rubinstein, Peterson, University Creek Assocs. II, Ltd., supra. In the present case, GEICO was injured by the Defendants' violations of the Repair Act when it paid claims that it had no obligation to pay as the result of the Defendants' violations of the Repair Act.

In this context, some courts have held that the Repair Act only provides a private right of action to a "customer", and that insurance companies such as GEICO do not meet the statutory definition of a "customer" – i.e., the "person who signs the written repair estimate or any other person whom the person who signs the written repair estimate designates on the written repair estimate as a person who may authorize repair work." See, e.g., Allstate Ins. Co. v. Auto Glass America, LLC, 418 F. Supp. 3d 1009, 1024–25 (M.D. Fla. 2019)(holding that an insurer is not a "customer" under the Repair Act). However, Florida law makes it clear that the Repair Act is a remedial statute that is entitled to a liberal construction so as to advance the remedy provided where it is consistent with the legislative purpose. See Raymar Constr. Co., supra. As noted above, Florida District Courts of Appeal have explicitly rejected narrow constructions of the Repair Act's terms – including the term "customer" – where doing so would undermine the remedial purposes

of the statute. See 1616 Sunrise Motors, Inc., supra (rejecting narrow construction of the term "customer" in the Repair Act, where the narrow construction would have permitted a repair shop to obtain payment from a non-customer that it was barred from obtaining from a customer because of its violation of the Repair Act); Raymar Constr. Co. (rejecting narrow construction of "consumer transaction" in then-current version of the Repair Act, where to do so would have undermined the consumer protections afforded by the statute).[9]

Accordingly, GEICO is entitled to summary judgment against the Defendants on its Repair Act claim.

However, even if GEICO could not state a direct cause of action under the Repair Act – and as set forth herein, it can – GEICO still would be entitled to summary judgment on its unjust enrichment, FDUTPA, and declaratory judgment claims, because the Defendants' violations of the Repair Act divested them of any right to collect on Shazam Glass's billing. For example, numerous federal courts have rejected arguments to the effect that: (i) a plaintiff-insurer supposedly could not predicate unjust enrichment or fraud-based claims on a defendant's misrepresentations regarding its compliance with relevant state statutes and eligibility to collect insurance benefits; because (ii) the state statutes themselves did not provide the plaintiff-insurer with private rights of action. See, e.g., Government Employees Insurance Co. et al v. Cereceda, et al., S.D. Fla. Case No. 19-cv-22206, at Docket Nos. 57, 72 (though the defendants argued that Florida laws regulating advertising by chiropractors contained no private right of action for a plaintiff-insurer, the court denied their motion to dismiss, because GEICO did not assert a private right of action under the

---

[9] As the Court is aware, if the Florida Supreme Court has not spoken on an issue, Florida District Court of Appeals decisions control absent persuasive indication that the Florida Supreme Court would rule otherwise. See, e.g., Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co., 250 F. Supp. 2d 1357, fn. 3 (M.D. Fla. 2003). In the present case, it does not appear as if the Florida Supreme Court has ever ruled on the proper construction of the Repair Act. Accordingly, the District Court of Appeals' decision in 1616 Sunrise Motors, Inc. and Raymar Constr. Co. should control.

chiropractor advertising laws – instead, it alleged unjust enrichment, FDUTPA, declaratory, and fraud-based claims based on the theory that the defendants' violations of the chiropractor advertising laws divested them of the right to collect on their insurance claims); Gov't Emples. Ins. Co. v. Korn, 310 F.R.D. 125, 130 fn. 8 (D.N.J. 2015)(rejecting defendants' argument that plaintiff-insurer improperly attempted to predicate its RICO claims on "alleged violations of New Jersey law which prohibit non-physicians from owning and controlling medical practices", where the alleged predicate acts were mail fraud, "not any violation of New Jersey law."); State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC, 107 F. Supp. 3d 772, 797-798 (E.D. Mich. 2015)(rejecting, as "[t]rue but irrelevant", defendant healthcare providers' contention that the plaintiff-insurer lacked standing to sue under Michigan's self-referral law, where the insurer's fraud claims were not based on allegations that the defendants violated the self-referral law per se, but rather on misrepresentations in the defendants' billing to the effect that the services were "were lawfully rendered and reimbursable"); Allstate Ins. Co., et al. v. Timothy J. Weir, D.C., et al., 2008 U.S. Dist. LEXIS 91270 at * 22 (E.D.N.C. 2008)("Allstate does not seek to recover per se under a fraudulent incorporation claim in violation of the Professional Corporation Act; rather Allstate argues that defendants misrepresented their corporate status and that this misrepresentation forms an element of Allstate's common law fraud claim.")[10]

---

[10] Notably, the Defendants raised similar kinds of arguments in the present case, when they moved to dismiss GEICO's Amended Complaint, and argued that GEICO could not show any damages as the result of their Repair Act violations. See ECF No. 19, pp. 23-24. This Court rejected that argument, noting that "Defendants misconstrue the Amended Complaint. GEICO's theory of the case is not that Defendants' violations of the Repair Act, standing alone, caused it to suffer financial losses. The Amended Complaint makes clear that GEICO's alleged injuries stem from Defendants' alleged submission of fraudulent claims seeking payment for non-reimbursable services. … On GEICO's theory, Defendants' alleged Repair Act violations made them ineligible to receive payment for the windshield-related services and were thus a component of the fraudulent scheme." See ECF No. 29, p. 16.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for summary judgment should be granted.

Respectfully submitted,

*/s/ John P. Marino*
John P. Marino (FBN 814539)
Lindsey R. Trowell (FBN 678783)
Kristen L. Wenger (FBN 92136)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Phone:  (904) 598-6100
Facsimile:  (904) 598-6204
ltrowell@sgrlaw.com
jmarino@sgrlaw.com
kwenger@sgrlaw.com

Yonatan Bernstein (admitted pro hac vice)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11550
Phone:  (516) 357-3000
Facsimile:  (516) 357-3333
yonatan.bernstein@rivkin.com

*Attorneys for Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., and GEICO General Insurance Company*

## CERTIFICATE OF SERVICE

I certify that on January 19, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the counsel of record in this case.

*/s/ John P. Marino*
Attorney

29